

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SHALAINE JOHNSON,                )
                                 )
            Plaintiff,           )        Case No. 01 C 2180
                                 )                    JUDGE PALLMEYER
      v.                         )
ILLINOIS CENTRAL RAILROAD CO.,   )        Related to General Electric Company
a corporation;                   )        v. Billy E. Adkins, Administrator of the
SAFETRAN SYSTEMS CORPORATION,    )        Estate of Helena R. Adkins, Deceased,
a corporation;                   )        No. 01 C 1307
GENERAL ELECTRIC COMPANY,        )
a corporation;                   )
GENERAL SIGNAL CO., a corporation; )      MAGISTRATE JUDGE LEVIN
BIRMINGHAM STEEL COMPANY,        )
a corporation;                   )
MELCO TRANSFER, INC., an Illinois )
corporation; and                 )
JOHN STOKES,                     )
                                 )
            Defendants.          )

**DOCKETED**

**MAR 2 9 2001**

**FILED-ED4**
**01 MAR 28 PM 3:20**
**CLERK U.S. DISTRICT COURT**

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446, please take notice that Defendant General Electric Company

("General Electric") has removed this case from the Circuit Court of Cook County, Illinois (Case

No. 99 L 3195 M, Consolidated with 99 L 3194 M), in which it is currently pending, to the United

States District Court for the Northern District of Illinois, Eastern Division. In support of this

removal, General Electric states as follows:

1.      This action is removable pursuant to 28 U.S.C. §§ 1331, 1367, and 1441 under this

Court's federal question jurisdiction. In particular, this Court has subject matter jurisdiction over

this action because it arises under the laws of the United States within the meaning of 28 U.S.C.

§ 1331, in that Plaintiff's Amended State Court Complaint, on its face, asserts claims based upon

alleged "non-compliance with applicable standards, customs, practices, guidelines or rules," all of

which are purely and exclusively federal in nature.

2.     In particular, the U.S. Secretary of Transportation, acting through the Federal Railroad Administration, has promulgated regulations governing the design, manufacture, construction and materials related to locomotives and their fuel systems. See 49 C.F.R. §§ 229.93, 229.95, 229.97, 229.101, 229.45, 238.03, 238.05, 238.09, 238.223 and 238.423.

3.     In addition, this Court has subject matter jurisdiction over this action because it arises under the laws of the United States within the meaning of 28 U.S.C. § 1331, in that the claims at issue are completely preempted and governed by federal statutes and regulations, including the provisions of the Locomotive Inspection Act, 49 U.S.C. § 20701, et seq. (formerly the "Boiler Inspection Act").

4.     On or about March 22, 1999, Plaintiff Shalaine Johnson ("Plaintiff") commenced this action by filing a Complaint against certain defendants, but not General Electric, in the Circuit Court of Cook County, Illinois.

5.     Plaintiff's claims arise from an unusually severe derailment of an Amtrak passenger train after it struck a tractor-trailer truck at a crossing in Bourbonnais, Illinois on March 15, 1999.

6.     On or about February 28, 2001, General Electric, the co-designer and supplier of the "Genesis" locomotives pulling the Amtrak passenger train at the time of the March 15, 1999 derailment, was served with Plaintiff's Amended Complaint, adding General Electric to her pending action in Cook County Circuit Court.

7.     Plaintiff's Amended Complaint asserts claims against General Electric of alleged defects or negligence in the design, manufacture, construction, performance, and choice of materials of the Genesis locomotive.

8.     It has long been settled that Congress intended federal law, pursuant to the Locomotive Inspection Act, to occupy completely the entire field of locomotive equipment and safety. Thus, the Locomotive Inspection Act's complete field preemption precludes any state effort

-2-

to regulate locomotive design or construction. See, e.g., Napier v. Atl. Coast Line R.R., 272 U.S.

605, 612-13 (1926). Complete field preemption is a doctrine of federal jurisdiction. See, e.g.,

Moran v. Rush Prudential HMO, Inc., 230 F.3d 959, 967 (7th Cir. 2000).

9. Through the Locomotive Inspection Act, the federal government has established a

comprehensive, national regime of locomotive regulation which preempts every state effort,

including tort litigation, to establish independent standards for the design, manufacture,

construction, performance and materials of locomotives.

10. Because complete preemption is necessary to maintain uniformity of railroad

operating standards across state lines and to avoid immediate interference with interstate commerce

and travel, state common law claims which seek to impose requirements within the field of

locomotive safety are completely preempted, even if no specific federal regulation covers the

subject of the alleged defective or negligent design, manufacture, construction or choice of

material.

11. Imposing state common law tort or warranty liability upon locomotive

manufacturers would impermissibly force them to conform to design, construction and material

standards imposed by the states, transferring regulatory power from the Secretary of Transportation

to the state courts. The Locomotive Inspection Act forecloses this adverse result.

12. Thus, Plaintiff's state common law tort and implied warranty claims, including those

related to alleged defects or negligence in the design, manufacture, construction, performance, and

choice of materials of the Genesis locomotive, are completely preempted because they fall within a

field that Congress intended the federal government to occupy exclusively.

13. Accordingly, based upon the federal question alleged on the face of Plaintiff's

Amended Complaint and based upon the complete federal preemption of all claims alleged in the

PI-1046623v1
765625 - 048002

Amended Complaint, this action is properly removed to this Court pursuant to 28 U.S.C. § 1441(a) and (c).

14.     This Notice is being filed within thirty (30) days of service of Plaintiff's initial pleading on General Electric and is therefore timely and proper pursuant to the provisions of 28 U.S.C. § 1446(b).

15.     All of the properly named defendants that are legal entities subject to service of process consent to the removal of this case to Federal District Court.  See Letters of Consent attached as Exhibit A.

16.     Pursuant to 28 U.S.C. § 1446(a), General Electric attaches as Exhibit B a copy of all process, pleadings, orders and other papers of every kind related to this action that have been served upon General Electric.

17.     Written notification of the filing of this Notice of Removal, together with a copy of the Notice of Removal, will be provided to the Plaintiff and will be filed with the Circuit Court of Cook County, Illinois, pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, General Electric requests that this case be removed from the Circuit Court of Cook County, Illinois to the United States District Court for the Northern District of Illinois, Eastern Division, and that there be no further proceeding in Case No. 99 L 3195 M filed in the Circuit Court of Cook County, Illinois.

Date: March 28, 2001

Respectfully submitted,

Daniel E. Reidy
June K. Ghezzi
JONES, DAY, REAVIS & POGUE
77 West Wacker
Chicago, Illinois 60601-1692
(312) 782-3939

Attorneys for Defendant
General Electric Company

Of Counsel:

Paul M. Pohl
Charles H. Moellenberg, Jr.
JONES, DAY, REAVIS & POGUE
One Mellon Bank Center
500 Grant Street, Suite 3100
Pittsburgh, PA 15219
(412) 391-3939

David B. Potter
Jennifer K. Eggers
OPPENHEIMER WOLFF & DONNELLY, LLP
3400 Plaza VII Building
45 South Seventh Street
Minneapolis, MN 55402
(612) 607-7000

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on March _28_, 2001, a true and

correct copy of Defendant General Electric Company's Notice of Removal was served, via first-

class U.S. mail, postage prepaid, on the following:

**ATTORNEYS FOR PLAINTIFFS**

Michael K. Demetrio
David C. Wise
CORBOY & DEMETRIO, P.C.
33 North Dearborn Street
Suite 2100
Chicago, IL 60602

**ILLINOIS CENTRAL RAILROAD COMPANY and the NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK)**

Susan Laing
ANDERSON BENNETT & PARTNERS
55 E. Monroe Street, Ste. 3650
Chicago, IL 60603

**MELCO TRANSFER and JOHN R. STOKES**

Bradford S. Purcell
PURCELL & WARDROPE CHTD.
300 South Wacker Drive
Suite 80
Chicago, IL 60606

**SAFETRAN SYSTEMS CORPORATION**

James B. Cohoon
BISTLINE & COHOON, A Law Corporation
23456 Hawthorne Boulevard, Suite 130
Torrance, CA 90505

**GENERAL SIGNAL CO.**

Ross B. Bricker
JENNER & BLOCK
One IBM Plaza
Chicago, IL 60611

**BIRMINGHAM STEEL**

Robert J. Franco II
BOLLINGER, RUBERRY & GARVEY
500 West Madison Street, 23rd Floor
Chicago, IL 60606

Counsel for General Electric

# EXHIBIT A

03/28/2001  10:54    4123947959              JONES DAY                          PAGE  03/03

03/27/2001 17:39 FAX 612 607      1          OPPENHEIMER LAW FIRM              T-832   P.002/002
Mar-27-01   10:24am  From-ANDERSON    ETT                          773

## ANDERSON, BENNETT & PARTNERS

WILLIAM G. ANDERSON, III
PATRICIA J. BARKER
M. ELIZABETH BENNETT
MARY ELLEN BUSCH
CHAD M. CASTRO
MARILEE CLAUSING
PATRICIA J. FOLTZ

**93 EAST MONROE
SUITE 3650
CHICAGO, ILLINOIS 60603**

(312) 673-7800

FACSIMILE (312) 673-7781

LAURA L. GINETT
DIANE E. JENNINGS
SUSAN K. LAING
MARK J. LIRA
JASON A. PARSON
R. DENNIS PASOR
DAVID J. SLAWKOWSKI

March 27, 2001

**VIA FACSIMILE**

Ms. Jennifer Eggers
Oppenheimer, Wolff & Donnelly
Plaza VII, Suite 3400
45 South Seventh Street
Minneapolis, Minnesota 55402

     Re:    *Bourbonnais Litigation*

Dear Ms. Eggers:

     This confirms our conversation earlier today in which I stated that my clients, Illinois Central Railroad Company and National Railroad Passenger Corporation, consent to the removal to federal court of all cases arising out of the March 15, 1999, Bourbonnais accident in which the Illinois Central and/or Amtrak are parties.

     Yours very truly,

     ANDERSON, BENNETT & PARTNERS

     By:  Susan K. Laing

SKL:dm

## JONES, DAY, REAVIS & POGUE

500 GRANT STREET • SUITE 3100

PITTSBURGH, PENNSYLVANIA 15219-2502

TELEPHONE: 412-391-3939 • FACSIMILE: 412-394-7959

WRITER'S DIRECT NUMBER:
412-394-7231
jpdonohue@jonesday.com

305216
762625-048002
104711lvl

March 28, 2001

VIA FACSIMILE (312) 466-8001

Vincent Tomkiewicz, Esq.
Bollinger, Ruberry & Garvey
500 West Madison Street, 23rd Floor
Chicago, IL 60606

Re: Bourbonnais Derailment Cases

Dear Mr. Tomkiewicz:

This will confirm our telephone conversation of today and Mickey Pohl's telephone conversation with Robert Franco of March 22, 2001, wherein you and Mr. Franco indicated on behalf of your client, Birmingham Steel Company, that you consent to the removal of the cases listed on Attachment A, appended hereto, dealing with those arising from the Bourbonnais derailment.

Please feel free to call me if you have any questions or wish to discuss this further.

Very truly yours,

Joseph P. Donohue

cc: Paul Michael Pohl, Esq.

## JONES, DAY, REAVIS & POGUE

500 GRANT STREET • SUITE 3100

PITTSBURGH, PENNSYLVANIA 15219-2502

TELEPHONE: 412·391·3939 • FACSIMILE: 412·394·7959

WRITER'S DIRECT NUMBER:
412-394-7900
pmpohl@jonesday.com

305216
765625-048002
1046923v1

March 26, 2001

VIA FEDERAL EXPRESS

Brad Purcell, Esq.
Purcell & Wardrope
300 South Wacker Drive, 8th Floor
Chicago, IL  60606

Re:    Bourbonnais Derailment Cases

Dear Mr. Purcell:

This will confirm our telephone conversation of March 21, 2001, wherein you indicated on behalf of your clients, Melco Transfer, Inc. and John Stokes, that you consent to the removal of the cases listed in Attachment A, appended hereto.

I have enclosed a draft of General Electric's Notice of Removal for your review. To confirm your consent to removal, please sign this letter and return it to me by facsimile at (412) 394-7959.

Please feel free to call me if you have any questions or wish to discuss this further.

Very truly yours,

Michey Pohl / JPD

Paul Michael Pohl

AGREED:

Brad Purcell
Counsel for Melco Transfer, Inc.
and John Stokes

# BISTLINE & COHOON
### A LAW CORPORATION

JAMES B. COHOON
GREGORY D. BISTLINE
TED H. LUYMES
GREGORY A. DILTS
ADRIENNE R. HAHN
JOHN M.C. REILLY

SKYPARK BLDG. 5, SUITE 130
23456 HAWTHORNE BOULEVARD
TORRANCE, CALIFORNIA 90505-4717
(310) 378-6360
FAX: (310) 378-6352
E-MAIL: law@bistlinecohoon.com

PASADENA OFFICE

2500 E. COLORADO BLVD.
SUITE 340
PASADENA, CA 91107-3766
(626) 440-0591
FAX: (626) 440-0691

March 27, 2001

*VIA UPS OVERNIGHT MAIL*

June Ghezzi, Esq.
Jones, Day, Reavis & Pogue
77 West Wacker
Chicago, Illinois 60601-1692

RE: **Bourbonnais Train Accident Cases**
     Our Client: Safetran Systems Corporation

Dear Ms. Ghezzi:

At the request of your colleague Joseph Donohue, we are sending you a copy of his letter to Jim Cohoon, bearing Mr. Cohoon's original signature, indicating his agreement to your petition for removal.

Please give us a call with any questions you may have regarding this matter.

Very truly yours,

**BISTLINE & COHOON**
**A Law Corporation.**

CHRIS M. CAMERON
Legal Assistant to James B. Cohoon

03/28/01  13:53                                              NO.673  P003/003

LAW OFFICES

# JENNER & BLOCK, LLC

ONE IBM PLAZA
CHICAGO, ILLINOIS 60611

PHONE (312) 222-9350
FAX (312) 527-0484

WRITER'S DIRECT DIAL: (312) 923-4524
WRITER'S DIRECT FAX: (312) 840-7524
INTERNET ADDRESS: rbricker@jenner.com

March 28, 2001

**VIA FACSIMILE**

Jennifer K. Eggers, Esq.
Oppenheimer, Wolff & Donnelly
Plaza VII, Suite 3400
45 South Seventh Street
Minneapolis, Minnesota 55402

      Re:    Bourbonnais Litigation

Dear Ms. Eggers:

      This letter confirms that my client, General Signal Company, consents to the removal
to federal court of all cases arising out of the March 1999 Bourbonnais accident in which General
Signal Company is named as a party defendant.

      Sincerely,

Ross B. Bricker

RBB/cd

cc:    Roibin J. Ryan, Esq.

DALLAS OFFICE
3150 BANK ONE CENTER
1717 MAIN STREET
DALLAS, TX 75201
PHONE (214) 745-8700
FAX: (214) 745-8757

LAKE FOREST OFFICE
ONE WESTMINSTER PLACE
LAKE FOREST, IL 60045
PHONE (847) 295-9200
FAX (847) 295-7810

WASHINGTON OFFICE
601 THIRTEENTH STREET, N.W.
SUITE 1200 SOUTH
WASHINGTON, D.C. 20005
PHONE (202) 639-6000
FAX (202) 639-6066

TOTAL P.02

# EXHIBIT  B

| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS | (7-90) CCG-1 |

MKD/DCW/mm      99-803      2/23/01      #02329

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

SHALAINE JOHNSON, )
                Plaintiff, )
                 )
    v. )    No.    99 L 3195 M
                 )    Consolidated with 99 L 3194 M
ILLINOIS CENTRAL RAILROAD CO., )
a corporation; )    PLEASE SERVE:
SAFETRAN SYSTEMS CORPORATION, )    SEE ATTACHED SERVICE LIST
a corporation; )
GENERAL ELECTRIC COMPANY, )
a corporation; )
GENERAL SIGNAL CO., a corporation; )
BIRMINGHAM STEEL COMPANY, )
a corporation; )
MELCO TRANSFER, INC., an Illinois )
corporation; and )
JOHN STOKES, )
             Defendants. )

### SUMMONS

To each defendant:

    YOU ARE SUMMONED and required to file an answer in this case, or otherwise file your appearance in the office of the clerk of this court (located in the Richard J. Daley Center, Room * 801, Chicago, Illinois 60602) within 30 days after service of this summons, not counting the day of service. IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT, A COPY OF WHICH IS HERETO ATTACHED.

To the officer:

    This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than 30 days after its date.

WITNESS,_____, 2001

AURELIA PUCINSKI Clerk of Court

Date of service:_____FEB 28 2001_____, 2001

| | |
|---|---|
| Name: | David C. Wise/Corboy & Demetrio |
| Attorney for: | Plaintiff |
| Address: | 33 North Dearborn Street, Suite 2100 |
| City: | Chicago, Illinois 60602 |
| Telephone: | 312-346-3191 |
| Atty. No.: | 02329 |

### AURELIA PUCINSKI, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

*Law Division Room 801
Chancery-Divorce Division Room 802
County Division Room 801
Probate Division Room 1202

# SERVICE LIST

1. **Safetran Systems Corporation**
   c/o CT Corporation System
   208 South LaSalle Street
   Chicago, Illinois 60604

2. **General Electric Company**
   c/o CT Corporation System
   208 South LaSalle Street
   Chicago, Illinois 60604

3. **Birmingham Steel Corporation**
   c/o The Illinois Corporation Service Company
   700 South 2nd Street
   Springfield, Illinois 62704

4. **General Signal Corporation**
   c/o The Corporation Trust Company
   1209 Orange Street
   Wilmington, Delaware 19801

MKD/DCW/mm     99-803     2/19/01     #02329·

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

| | | |
|---|---|---|
| SHALAINE JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.    99 L 3195 M |
| | ) | Consolidated with 99 L 3191 |
| ILLINOIS CENTRAL RAILROAD CO., | ) | |
| a corporation; | ) | |
| SAFETRAN SYSTEMS CORPORATION, | ) | |
| a corporation; | ) | |
| GENERAL ELECTRIC COMPANY, | ) | |
| a corporation; | ) | |
| GENERAL SIGNAL CO., a corporation; | ) | |
| BIRMINGHAM STEEL COMPANY, | ) | |
| a corporation; | ) | |
| MELCO TRANSFER, INC., an Illinois | ) | |
| corporation; and | ) | |
| JOHN STOKES, | ) | |
| | ) | |
| Defendants. | ) | |

FILED-1
FEB 23 PH 2:37
CIRCUIT COURT OF COOK
COUNTY ILLINOIS
LAW DIVISION
DOROTHY BROWN
CLERK

## AMENDED COMPLAINT AT LAW

Plaintiff, SHALAINE JOHNSON, complaining of defendants, ILLINOIS CENTRAL

RAILROAD CO., a corporation (hereinafter referred to as I.C.), SAFETRAN SYSTEMS,

CORPORATION, a corporation (hereinafter referred to as SAFETRAN), GENERAL

ELECTRIC COMPANY, a corporation (hereinafter referred to as G.E.), GENERAL SIGNAL

CO., a corporation (hereinafter referred to as GENERAL SIGNAL), BIRMINGHAM STEEL

COMPANY, a corporation (hereinafter referred to as BIRMINGHAM), MELCO TRANSFER,

INC., an Illinois corporation (hereinafter referred to as MELCO), and JOHN STOKES

(hereinafter referred to as STOKES), states:

## COMMON FACTUAL ALLEGATIONS

1.     On and before March 15, 1999, I.C. owned, operated, managed, maintained and controlled certain railroad tracks running in generally a north/south direction at the grade crossing intersection with McKnight Road, an east/west public highway in Bourbonnais, Illinois.

2.     On and before March 15, 1999, I.C. owned, operated, managed, maintained and controlled the railroad grade crossing/signal protection system and siding tracks located at and near the McKnight Road crossing.

3.     On March 15, 1999 at the time and place aforesaid, Amtrak operated a passenger train commonly known as the "City of New Orleans" southbound on the I.C. railroad tracks toward the McKnight Road crossing.

4.     At said time and place, STOKES was driving a semi-tractor trailer truck eastbound on McKnight Road toward the I.C. grade crossing.

5.     At said time and place, as the Amtrak train approached the McKnight Road crossing, the grade crossing/signal protection system failed to give proper or suitable warning to STOKES of the approach of the train.

6.     At said time and place, the semi-tractor trailer entered the McKnight crossing.

7.     At said time and place, as STOKES was traversing the McKnight Road crossing, the Amtrak train crashed into the semi-tractor trailer truck.

8.     SHALAINE JOHNSON was a passenger on board the train and was injured in the crash.

9.     On and before March 15, 1999, G.E. was in the business of designing, manufacturing, selling and distributing train engines/locomotives.

2

10.     On and before March 15, 1999, G.E. was a merchant in the business of designing, manufacturing, selling and distributing train engines/locomotives.

11.     Prior to March 15, 1999, G.E. designed, manufactured, distributed, sold and placed certain train engines/locomotives into the stream of commerce.

12.     Prior to March 15, 1999, in its contract for sale, G.E. impliedly warranted that the train engines/locomotives were merchantable.

13.     Prior to March 15, 1999, in its contract for sale, G.E. impliedly warranted that the train engines/locomotives were fit for the particular purpose of safely withstanding a collision with a foreseeable vehicle at a grade crossing and protecting passengers and crew.

14.     Prior to March 15, 1999, and at the time it sold the train engines/locomotives, G.E. knew that train passengers and crew members were intended beneficiaries of the implied warranties.

15.     On March 15, 1999, G.E. train engines/locomotives were being operated as part of the Amtrak City of New Orleans train.

16.     At said time and place, after the collision and ensuing crash, one or more fuel tanks on the G.E. engines/locomotives ruptured and allowed fuel to escape.

17.     At said time and place, the fuel from the G.E. fuel tanks flowed into or near the sleeper cars, ignited, burned and injured and killed passengers.

18.     On and before March 15, 1999, GENERAL SIGNAL was in the business of designing, manufacturing, distributing, selling, installing and/or maintaining "GENERAL SIGNAL Automatic Highway Crossing Gates" ("crossing gates").

19.     On and before March 15, 1999, GENERAL SIGNAL was a merchant in the

3

business of designing, manufacturing, selling and distributing "GENERAL SIGNAL Automatic Highway Crossing Gates" ("crossing gates").

20.     Prior to March 15, 1999, GENERAL SIGNAL designed, manufactured, distributed, sold and installed "GENERAL SIGNAL Automatic Highway Crossing Gates" that were in place at the McKnight Road crossing.

21.     Prior to March 15, 1999, and in its contract for sale, GENERAL SIGNAL impliedly warranted that the "GENERAL SIGNAL Automatic Highway Crossing Gates" system was merchantable.

22.     Prior to March 15, 1999, and in its contract for sale, GENERAL SIGNAL impliedly warranted that the "GENERAL SIGNAL Automatic Highway Crossing Gates" system was fit for the particular purpose of correctly timing train crossings and giving suitable warning to passing motor vehicles.

23.     Prior to March 15, 1999, and at the time it sold the "GENERAL SIGNAL Automatic Highway Crossing Gates" system, GENERAL SIGNAL knew that train passengers and crew members were intended beneficiaries of GENERAL SIGNAL's implied warranties.

24.     On March 15, 1999 as the Amtrak train was approaching the McKnight grade crossing, the GENERAL SIGNAL gates failed to properly operate and activate.

25.     On and before March 15, 1999, SAFETRAN was in the business of designing, manufacturing, distributing and selling grade crossing protective systems ("GCPS") including the SAFETRAN 3000 system.

26.     On and before March 15, 1999, SAFETRAN was a merchant in the business of designing, manufacturing, selling and distributing grade crossing protective systems including

4

the SAFETRAN 3000 system.

27. Prior to March 15, 1999, SAFETRAN designed, manufactured, distributed and sold a SAFETRAN 3000 system to I.C. and participated in the placement, installation and or monitoring of the GCPS at the McKnight Road grade crossing as well as the GCPS at the crossings to the immediate north and south of the McKnight crossing.

28. Prior to March 15, 1999, and in its contract for sale, SAFETRAN impliedly warranted that the GCPS was merchantable.

29. Prior to March 15, 1999, in its contract for sale, SAFETRAN impliedly warranted that the GCPS was fit for the particular purpose of correctly coordinating the GCPS with the passing of trains across the crossing.

30. Prior to March 15, 1999, and at the time it sold the aforesaid GCPS, SAFETRAN knew that train passengers and crew members were intended beneficiaries of SAFETRAN's implied warranties.

31. On and before March 15, 1999, I.C. retained the right to control the engineer of the Amtrak train by requiring that he operate that train pursuant to the rules of the I.C. and follow the directives of I.C. employees or agents.

32. On and before March 15, 1999, the Amtrak train engineer was an agent of I.C. and was acting in the scope of and in furtherance of that relationship.

33. On and before March 15, 1999, I.C. placed or allowed rail cars to be placed on the siding track immediately to the north of the railroad crossing which limited the line of sight of those attempting to cross the grade crossing and the line of sight of the City of New Orleans' train engineer.

5

34.     On and before March 15, 1999, I.C. placed or allowed railroad cars to be placed on the side track immediately south of the crossing, which collided with the engine of the City of New Orleans, causing the train's engines to derail, tip over and/or release fuel.

35.     On and before March 15, 1999, BIRMINGHAM owned, operated, managed, maintained and controlled a facility located near the McKnight Road crossing.

36.     At said time and place, BIRMINGHAM caused and/or allowed semi-tractor trailers loaded with steel products to leave its facility at a location immediately to the west of the McKnight Road crossing, with the only path of egress being to traverse McKnight Road eastbound and cross the railroad tracks.

37.     At said time and place, BIRMINGHAM knew, or in the exercise of reasonable care should have known, that high speed rail traffic operated by Amtrak utilized the tracks and McKnight crossing which BIRMINGHAM's trucks were required to cross when leaving the BIRMINGHAM facility.

38.     On or before March 15, 1999, BIRMINGHAM requested and/or directed STOKES and/or his employer, MELCO, to come to the BIRMINGHAM facility for the purpose of loading the semi-tractor trailer with steel ribar so STOKES could deliver the ribar to a, customer of BIRMINGHAM's.

39.     On March 15, 1999, BIRMINGHAM loaded STOKES's semi-tractor trailer, provided STOKES with bills of lading for the delivery of the ribar, directed STOKES to whom, where and when to deliver the ribar and allowed STOKES to leave its facility along McKnight Road directly to the west of the aforesaid railroad crossing.

40.     At said time and place, STOKES was the agent or employee of BIRMINGHAM,

6

and BIRMINGHAM retained the right to control the conduct and actions of STOKES with respect to the pickup, loading, movement and delivery of the aforesaid ribar.

41. At said time and place, BIRMINGHAM owned, operated, managed, maintained and controlled side tracking immediately to the south of the McKnight Road crossing which BIRMINGHAM utilized to bring railroad cars onto its facility.

42. At said time and place, BIRMINGHAM placed or allowed rail cars to be placed on its siding track immediately to the south of the McKnight Road crossing and the lead engines of the City of New Orleans struck those rail cars resulting in the engines turning over.

43. At said time and place, under the apparent authority of the Illinois Commerce Commission, MELCO and STOKES, and each of them, were transporting large amounts of steel on behalf of BIRMINGHAM.

44. At said time and place, STOKES was the employee and/or agent of MELCO and was working in the scope of his employment.

45. At said time and place, BIRMINGHAM retained the right to control MELCO and STOKES.

46. At said time and place, MELCO and STOKES were agents of BIRMINGHAM and were acting within the scope of and in furtherance of that relationship.

47. SHALAINE JOHNSON was a passenger on board the train and was injured in the crash.

## Count I

### Defendant, Illinois Central Railroad - Negligence

Plaintiff realleges paragraphs 1 through 47 as if fully set forth herein.

7

48.    On and before March 15, 1999, I.C. was negligent in one or more of the following respects:

a.    Failed to properly or adequately install, operate, inspect, repair or maintain the grade crossing protection system and its various component parts at the aforesaid railroad crossing;

b.    Allowed the line of sight for those attempting to cross the grade crossing to be obscured by allowing train cars to be placed and/or kept on the side track immediately to the north of a grade crossing;

c.    Allowed the line of sight for the engineer of the southbound City of New Orleans to be obscured by allowing train cars to be placed and/or kept on the side track immediately to the north of a grade crossing;

d.    Carelessly and negligently failed to properly time the grade crossing protection system and/or barriers to prevent vehicles from being allowed to enter a grade crossing without allowing sufficient time to clear the grade crossing, given the extremely high speed nature of train traffic crossing the grade crossing at the time and place aforesaid;

e.    Failed to properly and/or adequately inspect, repair, replace or maintain the relays of the grade crossing protection system;

f.    Failed to properly and/or adequately inspect, repair, replace, manage or maintain the cables and wires of the grade crossing protection system;

g.    Failed to properly and/or adequately inspect, repair, replace, manage or maintain the signal gates and all external and internal component parts thereof;

h.    Failed to properly and/or adequately train, supervise, or monitor its employees or agents responsible for maintaining, inspecting, repairing or replacing the grade crossing protection system and all of its component parts;

8

i.   Failed to properly and/or adequately examine, review, evaluate, read or check inspection and/or maintenance forms or reports made or kept by its employees or agents responsible for the grade crossing protection system;

j.   By and through its agents failed to keep a proper or sufficient lookout for road traffic on, at or near the grade crossing when operating the City of New Orleans;

k.   By and through its agents failed to properly or sufficiently control, slow or brake the City of New Orleans train as it approached the grade crossing;

l.   Placed or allowed to be placed railroad cars on side tracking to the south of the crossing that posed an unreasonable risk to foreseeable southbound rail traffic;

m.   Failed to properly or adequately install component parts of the grade crossing protection system, including, but not limited to, the Safetran 3000 system;

n.   Failed to properly or adequately monitor or adjust the grade crossing protection system to provide the warning times it deemed safe and/or adequate;

o.   Failed to properly or adequately monitor or adjust the grade crossing protection system to determine that it adequately predicted or sensed train movements.

49.   As a proximate result of one or more of the aforesaid negligent acts or omissions, SHALAINE JOHNSON sustained injuries of a personal and pecuniary nature including but not limited to physical pain, suffering, terror and mental anguish.

WHEREFORE, plaintiff, SHALAINE JOHNSON, demands judgment against defendant, ILLINOIS CENTRAL RAILROAD COMPANY, a corporation, for a sum in excess of the jurisdictional limit of the Law Division of the Circuit Court of Cook County, Illinois.

9

## Count II

**Defendant, Safetran - Product Liability**

Plaintiff realleges paragraphs 1 through 47 as if fully set forth herein.

50.    On and before March 15, 1999, and at the time SAFETRAN's grade crossing protective systems left its control, the grade crossing protective systems were in an unreasonably dangerous condition in that they were:

    a.    Designed, manufactured, distributed and sold without proper or adequate instructions or directions as to their installation;

    b.    Designed, manufactured, distributed and sold with a speed predictor system that did not provide consistently accurate predictions of train speeds;

    c.    Designed, manufactured, distributed and sold without proper or adequate supervision or monitoring of installation;

    d.    Designed, manufactured, distributed or sold without giving proper or adequate speed predictions or warning times to either users of the rails or vehicle users approaching and/or crossing the grade crossing;

    e.    Designed, manufactured, distributed and sold with sensor components that did not properly or adequately sense the presence of a train or the speed of a train;

    f.    It designed, manufactured, distributed and sold the train/grade crossing warning system in such a way that it failed to properly time the lights and gates at the McKnight crossing to allow safe passage by John Stokes across the crossing;

    g.    It designed, manufactured, distributed and sold the train/grade crossing warning system without a suitable warning system to alert owners and operators that the system was malfunctioning.

51.     As a proximate result of one or more of these unreasonably dangerous conditions,

SHALAINE JOHNSON sustained injuries of a personal and pecuniary nature including but not

limited to physical pain, suffering, terror and mental anguish.

WHEREFORE, plaintiff, SHALAINE JOHNSON, demands judgment against defendant,

SAFETRAN SYSTEMS CORPORATION, a corporation, for a sum in excess of the

jurisdictional limit of the Law Division of the Circuit Court of Cook County, Illinois.

## Count III

### Defendant, Safetran - Negligence

Plaintiff realleges paragraphs 1 through 47 as if fully set forth herein.

52.     On and before March 15, 1999, SAFETRAN was negligent in one or more of the

following respects:

a.  Designed, manufactured, distributed and sold a GCPS
    without proper or adequate instructions or directions as to
    their installation;

b.  Designed, manufactured, distributed and sold a GCPS with
    a speed predictor system that did not provide consistently
    accurate predictions of train speeds;

c.  Designed, manufactured, distributed and sold a GCPS
    without proper or adequate supervision or monitoring of
    installation;

d.  Designed, manufactured, distributed or sold a GCPS
    without giving proper or adequate speed predictions or
    warning times to either users of the rails or vehicle users
    approaching and/or crossing the grade crossing;

e.  Designed, manufactured, distributed and sold a GCPS with
    sensor components that did not properly or adequately
    sense the presence of a train or the speed of a train;

11

      f.      It designed, manufactured, distributed and sold a GCPS in such a way that it failed to properly time the lights and gates at the McKnight crossing to allow safe passage by John Stokes across the crossing;

      g.     It designed, manufactured, distributed and sold a GCPS without a suitable warning system to alert owners and operators that the system was malfunctioning.

53.    As a proximate result of one or more of these negligent acts or omissions, SHALAINE JOHNSON sustained injuries of a personal and pecuniary nature including but not limited to physical pain, suffering, terror and mental anguish.

WHEREFORE, plaintiff, SHALAINE JOHNSON, demands judgment against defendant, SAFETRAN SYSTEMS CORPORATION, a corporation, for a sum in excess of the jurisdictional limit of the Law Division of the Circuit Court of Cook County, Illinois.

## Count IV

### Defendant, Safetran - Breach of Implied Warranty of Merchantability

Plaintiff realleges paragraphs 1 through 47 as if fully set forth herein.

54.    On and before March 15, 1999, SAFETRAN breached the implied warranty of merchantability in one or more of the following ways:

      a.     Designed, manufactured, distributed and sold the GCPS without proper or adequate instructions or directions as to their installation;

      b.     Designed, manufactured, distributed and sold the GCPS with a speed predictor system that did not provide consistently accurate predictions of train speeds;

      c.     Designed, manufactured, distributed and sold the GCPS without proper or adequate supervision or monitoring of installation;

d.  Designed, manufactured, distributed or sold the GCPS without giving proper or adequate speed predictions or warning times to either users of the rails or vehicle users approaching and/or crossing the grade crossing;

e.  Designed, manufactured, distributed and sold the GCPS with sensor components that did not properly or adequately sense the presence of a train or the speed of a train;

f.  It designed, manufactured, distributed and sold the GCPS in such a way that it failed to properly time the lights and gates at the McKnight crossing to allow safe passage by John Stokes across the crossing;

g.  It designed, manufactured, distributed and sold the GCPS without a suitable warning system to alert owners and operators that the system was malfunctioning.

55.  As a proximate result of one or more of these breaches of the implied warranty of merchantability, SHALAINE JOHNSON sustained injuries of a personal and pecuniary nature including but not limited to physical pain, suffering, terror and mental anguish.

WHEREFORE, plaintiff, SHALAINE JOHNSON, demands judgment against defendant, SAFETRAN SYSTEMS CORPORATION, a corporation, for a sum in excess of the jurisdictional limit of the Law Division of the Circuit Court of Cook County, Illinois.

<u>**Count V**</u>

<u>**Defendant, Safetran/Breach of Implied Warranty of Fitness for a Particular Purpose**</u>

Plaintiff realleges paragraphs 1 through 47 as if fully set forth herein.

56.  On and before March 15, 1999, SAFETRAN breached the implied warranty of fitness for a particular purpose in one or more of the following ways:

a.  Designed, manufactured, distributed and sold the GCPS without proper or adequate instructions or directions as to their installation;

13

b. Designed, manufactured, distributed and sold the GCPS with a speed predictor system that did not provide consistently accurate predictions of train speeds;

c. Designed, manufactured, distributed and sold the GCPS without proper or adequate supervision or monitoring of installation;

d. Designed, manufactured, distributed or sold the GCPS without giving proper or adequate speed predictions or warning times to either users of the rails or vehicle users approaching and/or crossing the grade crossing;

e. Designed, manufactured, distributed and sold the GCPS with sensor components that did not properly or adequately sense the presence of a train or the speed of a train;

f. It designed, manufactured, distributed and sold the GCPS in such a way that it failed to properly time the lights and gates at the McKnight crossing to allow safe passage by John Stokes across the crossing;

g. It designed, manufactured, distributed and sold the GCPS without a suitable warning system to alert owners and operators that the system was malfunctioning.

57. As a proximate result of one or more of these breaches of the implied warranty of fitness for a particular purpose, SHALAINE JOHNSON sustained injuries of a personal and pecuniary nature including but not limited to physical pain, suffering, terror and mental anguish.

WHEREFORE, plaintiff, SHALAINE JOHNSON, demands judgment against defendant, SAFETRAN, for a sum in excess of the jurisdictional limit of the Law Division of the Circuit Court of Cook County, Illinois.

## Count VI

### Defendant, General Electric/Product Liability

Plaintiff realleges paragraphs 1 through 47 as if fully set forth herein.

14

58.     On March 15, 1999, and at the time they left G.E.'s control, said train

engines/locomotives were in an unreasonably dangerous condition in one or more of the

following respects:

    a.    They were designed, manufactured, distributed and sold
with insufficient durability to withstand a foreseeable
collision and remain intact;

    b.    They were designed, manufactured, distributed and sold
without a protective device to prevent fuel from escaping in
the event a fuel tank was ruptured;

    c.    They were designed, manufactured, distributed and sold in
such a way that the fuel tanks were not sufficiently
protected from foreseeable crash forces;

    d.    They were manufactured, designed and sold with metal and
component parts that ruptured due to their defective nature;

    e.    They were manufactured, designed and sold without proper
pre-distribution testing or inspection;

    f.    They were manufactured, designed and sold without proper
or adequate safeguards or adequate protective devices to
prevent the continued flow of fuel out of the fuel tanks after
the rupture or breach of the tanks;

    g.    They were designed, manufactured, distributed and sold in
non-compliance with applicable standards, customs,
practices, guidelines or rules.

59.     As a proximate result of one or more of these unreasonably dangerous conditions,

SHALAINE JOHNSON sustained injuries of a personal and pecuniary nature including but not

limited to physical pain, suffering, terror and mental anguish.

WHEREFORE, plaintiff, SHALAINE JOHNSON, demands judgment against defendant,

GENERAL ELECTRIC COMPANY, a corporation, for a sum in excess of the jurisdictional

limit of the Law Division of the Circuit Court of Cook County, Illinois.

## Count VII

### Defendant, General Electric - Negligence

Plaintiff realleges paragraphs 1 through 47 as if fully set forth herein.

60. On and before March 15, 1999, G.E. was negligent in one or more of the following respects:

a. It designed, manufactured, distributed and sold the train engines/locomotives with insufficient durability to withstand a foreseeable collision and remain intact;

b. It designed, manufactured, distributed and sold the train engines/locomotives without a protective device to prevent fuel from escaping in the event a fuel tank was ruptured;

c. It designed, manufactured, distributed and sold the train engines/locomotives in such a way that the fuel tanks were not sufficiently protected from foreseeable crash forces;

d. It manufactured, designed and sold the train engines/locomotives with metal and component parts that ruptured due to their defective nature;

e. It manufactured, designed and sold the train engines/locomotives without proper pre-distribution testing or inspection;

f. It manufactured, designed and sold the train engines/locomotives without proper or adequate safeguards or adequate protective devices to prevent the continued flow of fuel out of the fuel tanks after the rupture or breach of the tanks;

g. It designed, manufactured, distributed and sold the train engines/locomotives in non-compliance with applicable standards, customs, practices, guidelines or rules.

61. As a proximate cause of one or more of these negligent acts or omissions,

16

SHALAINE JOHNSON sustained injuries of a personal and pecuniary nature including but not limited to physical pain, suffering, terror and mental anguish.

WHEREFORE, plaintiff, SHALAINE JOHNSON, demands judgment against defendant. GENERAL ELECTRIC COMPANY, a corporation, for a sum in excess of the jurisdictional limit of the Law Division of the Circuit Court of Cook County, Illinois.

### Count VIII

### Defendant, General Electric/Breach of Implied Warranty of Merchantability/Fuel Tank

Plaintiff realleges paragraphs 1 through 47 as if fully set forth herein.

62.    On and before March 15, 1999, G.E. breached the implied warranty of merchantability in one or more of the following ways:

a.    It designed, manufactured, distributed and sold the train engines/locomotives with insufficient durability to withstand a foreseeable collision and remain intact;

b.    It designed, manufactured, distributed and sold the train engines/locomotives without a protective device to prevent fuel from escaping in the event a fuel tank was ruptured;

c.    It designed, manufactured, distributed and sold the train engines/locomotives in such a way that the fuel tanks were not sufficiently protected from foreseeable crash forces;

d.    It manufactured, designed and sold the train engines/locomotives with metal and component parts that ruptured due to their defective nature;

e.    It manufactured, designed and sold the train engines/locomotives without proper pre-distribution testing or inspection;

f.    It manufactured, designed and sold the train engines/locomotives without proper or adequate safeguards or adequate protective devices to prevent the continued

17

flow of fuel out of the fuel tanks after the rupture or breach
of the tanks;

g.  It designed, manufactured, distributed and sold the train
engine/locomotive in non-compliance with applicable
standards, customs, practices, guidelines or rules.

63.  As a proximate result of one or more of these breaches of the implied warranty of

merchantability, SHALAINE JOHNSON sustained injuries of a personal and pecuniary nature

including but not limited to physical pain, suffering, terror and mental anguish.

WHEREFORE, plaintiff, SHALAINE JOHNSON, demands judgment against defendant,

GENERAL ELECTRIC COMPANY, a corporation, for a sum in excess of the jurisdictional

limit of the Law Division of the Circuit Court of Cook County, Illinois.

## Count IX

## Defendant, General Electric/Breach of Implied Warranty of Fitness for a Particular Purpose

Plaintiff realleges paragraphs 1 through 47 as if fully set forth herein.

64.  On and before March 15, 1999, G.E. breached the implied fitness for a particular

purpose in one or more of the following ways:

a.  It designed, manufactured, distributed and sold the train
engines/locomotives with insufficient durability to
withstand a foreseeable collision and remain intact;

b.  It designed, manufactured, distributed and sold the train
engines/locomotives without a protective device to prevent
fuel from escaping in the event a fuel tank was ruptured;

c.  It designed, manufactured, distributed and sold the train
engines/locomotives in such a way that the fuel tanks were
not sufficiently protected from foreseeable crash forces;

d.  It manufactured, designed and sold the train

18

engines/locomotives with metal and component parts that ruptured due to their defective nature;

e.    It manufactured, designed and sold the train engines/locomotives without proper pre-distribution testing or inspection;

f.    It manufactured, designed and sold the train engines/locomotives without proper or adequate safeguards or adequate protective devices to prevent the continued flow of fuel out of the fuel tanks after the rupture or breach of the tanks;

g.    It designed, manufactured, distributed and sold the train engines/locomotives in non-compliance with applicable standards, customs, practices, guidelines or rules.

65.    As a proximate result of one or more of these breaches of the implied warranty of fitness for a particular purpose, SHALAINE JOHNSON sustained injuries of a personal and pecuniary nature including but not limited to physical pain, suffering, terror and mental anguish.

WHEREFORE, plaintiff, SHALAINE JOHNSON, demands judgment against defendant, GENERAL ELECTRIC COMPANY, a corporation, for a sum in excess of the jurisdictional limit of the Law Division of the Circuit Court of Cook County, Illinois.

### Count X

### Defendant, General Signal - Product Liability

Plaintiff realleges paragraphs 1 through 47 as if fully set forth herein.

66.    On March 15, 1999 and at the time they left GENERAL SIGNAL's control and during the period intervening those dates, GENERAL SIGNAL's crossing gates were in an unreasonably dangerous condition in that:

a.    They were designed, manufactured, distributed, sold and installed with a hold clear device that did not adequately or consistently allow the gate armature to descend in a timely fashion;

b.  They were designed, manufactured, distributed, sold and installed with a hold clear device and gearing system that was subject to jamming or delaying the adequate or consistent descent of the gate's arm;

c.  They failed to provide adequate wiring and wiring designs to provide adequate and consistent electrical and/or mechanical controls for the timely and/or consistent activation of the gate's warning mechanisms;

d.  They failed to provide adequate instructions in the maintenance or repair of the crossing gates;

e.  They failed to contain adequate or effect prep holes;

f.  They contained inadequate relays that caused ineffective and/or inconsistent activation of the crossing gate's warning system;

g.  They failed to provide safe or adequate or consistent warnings to users of the rail right of way or the road traffic, for a reasonably expected and indicated time period.

67.  As a proximate result of one or more of these unreasonably dangerous conditions, SHALAINE JOHNSON sustained injuries of a personal and pecuniary nature including but not limited to physical pain, suffering, terror and mental anguish.

WHEREFORE, plaintiff, SHALAINE JOHNSON, demands judgment against defendant, GENERAL SIGNAL CORPORATION, a corporation, for a sum in excess of the jurisdictional limit of the Law Division of the Circuit Court of Cook County, Illinois.

### Count XI

## Defendant, General Signal - Negligence

Plaintiff realleges paragraphs 1 through 47 as if fully set forth herein.

68.  On and before March 15, 1999, GENERAL SIGNAL was negligent in one or

20

more of the following ways:

    a.    It designed, manufactured, distributed, sold and installed the crossing gates with a hold clear device that did not adequately or consistently allow the gate armature to descend in a timely fashion;

    b.    It designed, manufactured, distributed, sold and installed the crossing gates with a hold clear device and gearing system that was subject to jamming or delaying in the adequate or consistent descent of the gate's arm;

    c.    It failed to provide adequate wiring and wiring designs to provide adequate and consistent electrical and/or mechanical controls for the timely and/or consistent activation of the gate's warning mechanisms;

    d.    It failed to provide adequate instructions in the maintenance or repair of the crossing gates;

    e.    It failed to contain adequate or effect prep holes;

    f.    It contained inadequate relays that caused ineffective and/or inconsistent activation of the crossing gate's warning system;

    g.    It failed to provide safe or adequate or consistent warnings to users of the rail right of way or the road traffic, for a reasonably expected and indicated time period.

69.    As a proximate result of one or more of these negligent acts or omissions, SHALAINE JOHNSON sustained injuries of a personal and pecuniary nature including but not limited to physical pain, suffering, terror and mental anguish.

WHEREFORE, plaintiff, SHALAINE JOHNSON, demands judgment against defendant, GENERAL SIGNAL CORPORATION, a corporation, for a sum in excess of the jurisdictional limit of the Law Division of the Circuit Court of Cook County, Illinois.

21

## Count XII

### Defendant, General Signal/Breach of Implied Warranty of Merchantability

Plaintiff realleges paragraphs 1 through 47 as if fully set forth herein.

70.     On and before March 15, 1999, GENERAL SIGNAL breached the implied warranty of merchantability in one or more of the following ways:

a.      The crossing gates were designed, manufactured, distributed, sold and installed with a hold clear device that did not adequately or consistently allow the gate armature to descend in a timely fashion;

b.      The crossing gates were designed, manufactured, distributed, sold and installed with a hold clear device and gearing system that was subject to jamming or delaying the adequate or consistent descent of the gate's arm;

c.      Failed to provide adequate wiring and wiring designs to provide adequate and consistent electrical and/or mechanical controls for the timely and/or consistent activation of the gate's warning mechanisms;

d.      Failed to provide adequate instructions in the maintenance or repair of the crossing gates;

e.      Failed to contain adequate or effect prep holes;

f.      Contained inadequate relays that caused ineffective and/or inconsistent activation of the crossing gate's warning system;

g.      Failed to provide safe or adequate or consistent warnings to users of the rail right of way or the road traffic, for a reasonably expected and indicated time period.

71.     As a proximate result of one or more of these breaches of the implied warranty of merchantability, SHALAINE JOHNSON sustained injuries of a personal and pecuniary nature including but not limited to physical pain, suffering, terror and mental anguish.

22

WHEREFORE, plaintiff, SHALAINE JOHNSON, demands judgment against defendant.

GENERAL SIGNAL CORPORATION, a corporation, for a sum in excess of the jurisdictional

limit of the Law Division of the Circuit Court of Cook County, Illinois.

### Count XIII

### Defendant, General Signal/Breach of Implied Warranty of Fitness for a Particular Purpose

Plaintiff realleges paragraphs 1 through 47 as if fully set forth herein.

72.    On and before March 15, 1999, GENERAL SIGNAL breached the implied

warranty of fitness for a particular purpose in one or more of the following ways:

a.    The crossing gates were designed, manufactured, distributed, sold and installed with a hold clear device that did not adequately or consistently allow the gate armature to descend in a timely fashion;

b.    The crossing gates were designed, manufactured, distributed, sold and installed with a hold clear device and gearing system that was subject to jamming or delaying the adequate or consistent descent of the gate's arm;

c.    Failed to provide adequate wiring and wiring designs to provide adequate and consistent electrical and/or mechanical controls for the timely and/or consistent activation of the gate's warning mechanisms;

d.    Failed to provide adequate instructions in the maintenance or repair of the crossing gates;

e.    Failed to contain adequate or effect prep holes;

f.    Contained inadequate relays that caused ineffective and/or inconsistent activation of the crossing gate's warning system;

g.    Failed to provide safe or adequate or consistent warnings to users of the rail right of way or the road traffic, for a reasonably expected and indicated time period.

73.     As a proximate result of one or more of these breaches of the implied warranty of

fitness for a particular purpose, SHALAINE JOHNSON sustained injuries of a personal and

pecuniary nature including but not limited to physical pain, suffering, terror and mental anguish.

WHEREFORE, plaintiff, SHALAINE JOHNSON, demands judgment against defendant,

GENERAL SIGNAL CORPORATION, a corporation, for a sum in excess of the jurisdictional

limit of the Law Division of the Circuit Court of Cook County, Illinois.

**Count XIV**

**Defendant, Birmingham Steel**

Plaintiff realleges paragraphs 1 through 47 as if fully set forth herein.

74.     On and before March 15, 1999, BIRMINGHAM was negligent in one or more of

the following respects:

a.     Failed to provide a safe or adequate manner of egress from
its facility for semi-tractor trailers loaded with large
amounts of ribar;

b.     Overloaded the semi-tractor trailer with ribar;

c.     Failed to provide proper or adequate warnings or
instructions in the safe or proper manner of egress from its
facility with the type of load of ribar it provided;

d.     Failed to provide proper or adequate personnel to aid semi-
tractor trailers with egress from the facility;

e.     Placed, allowed to be placed, or failed to remove rail cars
on its siding track immediately to the south of the
McKnight crossing, from a location unreasonably close to
the main track used by the City of New Orleans or other
high speed trains;

f.     Failed to provide semi-tractor truck users egressing from its
facility with an adequate or proper line of sight to the north,
when BIRMINGHAM knew or in the exercise of
reasonable care should have known its failure to do so

caused an unreasonable risk, given the use and presence of high speed rail traffic;

g.    Caused obstructions of a northbound view for the semi-tractor trailer drivers egressing its facility;

h.    Through its agent or employee, John Stokes, approached and commenced to cross the aforesaid railroad grade crossing when the line of sight of the semi-tractor trailer driver was obscured;

i.    Through its agent or employee, John Stokes, commenced to transverse the aforesaid railroad grade crossing while an Amtrak train was in close proximity to the grade crossing;

j.    Through its agent or employee, John Stokes, failed to clear the railroad grade crossing in a safe or adequate manner when an oncoming southbound passenger train was at or about the crossing;

k.    Through its agent or employee, failed to give a safe or adequate warning, via lights, flashers, horns or other safety signals available of the truck's presence in the railroad grade crossing.

75.    As a proximate result of one or more of these negligent acts or omissions,

SHALAINE JOHNSON sustained injuries of a personal and pecuniary nature including but not

limited to physical pain, suffering, terror and mental anguish.

WHEREFORE, plaintiff, SHALAINE JOHNSON, demands judgment against defendant,

BIRMINGHAM STEEL CORPORATION, a corporation, for a sum in excess of the

jurisdictional limit of the Law Division of the Circuit Court of Cook County, Illinois.

## Count XV

### Defendants, Melco and Stokes

Plaintiff realleges paragraphs 1 through 47 as if fully set forth herein.

25

76.    On and before March 15, 1999, MELCO and STOKES, and each of them, were

negligent in one or more of the following respects:

    a.    Approached and commenced to cross the aforesaid
railroad grade crossing when the line of sight of the
semi-tractor trailer driver was obscured;

    b.    Commenced to transverse the aforesaid railroad
grade crossing while an Amtrak train was in close
proximity to the grade crossing;

    c.    Failed to clear the railroad grade crossing in a safe
or adequate manner when an oncoming southbound
passenger train was at or about the crossing;

    d.    Failed to give a safe or adequate warning, via lights,
flashers, horns or other safety signals available of
the truck's presence in the railroad grade crossing.

77.    As a proximate result of one or more of these negligent acts or omissions,

SHALAINE JOHNSON sustained injuries of a personal and pecuniary nature including but not

limited to physical pain, suffering, terror and mental anguish.

WHEREFORE, plaintiff, SHALAINE JOHNSON, demands judgment against

defendants, MELCO TRANSFER, INC., an Illinois corporation, and JOHN STOKES, and each

of them, for a sum in excess of the jurisdictional limit of the Law Division of the Circuit Court of

Cook County, Illinois.

MICHAEL K. DEMETRIO

Michael K. Demetrio
David C. Wise
CORBOY & DEMETRIO, P.C.
Attorneys for Plaintiff
33 North Dearborn Street, Suite 2100
Chicago, Illinois  60602
312-346-3191
Firm I.D. No. 02329

26

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Shalaine Johnson

## DEFENDANTS

Illinois Central Railroad Co., Safetran Systems Corporation, General Electric Company, et al.

**01C 2180**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**JUDGE PALLMEYER**

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Michael K. Demetrio
Corboy & Demetrio, P.C.
33 N. Dearborn St., 21st Floor
Chicago, IL 60602
(312) 346-3191

ATTORNEYS (IF KNOWN)
Daniel E. Reidy, June K. Ghezzi,
Jason G. Winchester
Jones, Day, Reavis & Pogue
77 West Wacker
Chicago, IL 60601

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**MAGISTRATE JUDGE LEVIN**

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

49 U.S.C. Section 20701; and 28 U.S.C. Section 2201

**MAR 29 2001**

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23
DEMAND $ N/A
CHECK YES only if demanded in complaint
JURY DEMAND: ☒ YES ☐ NO

## VIII.

This case ☒ is not a refiling of a previously dismissed action.
☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE
03/28/01

SIGNATURE OF ATTORNEY OF RECORD
*June K. Ghezzi*

UNITED STATES DISTRICT COURT
Related to General Electric Company v. Billy E. Adkins, Administrator of the Estate of Helena R. Adkins, Deceased, No. 01 C 1307, Lefkow J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

### Eastern Division

In the Matter of

SHALAINE JOHNSON

v.

ILLINOIS CENTRAL RAILROAD CO., a
corporation, et al.

Case Number: **01C  2180**

**JUDGE PALLMEYER**

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

GENERAL ELECTRIC COMPANY, DEFENDANT

*MAGISTRATE JUDGE LEVIN*

| (A) | (B) |
|---|---|
| SIGNATURE *June K. Ghezzi* | SIGNATURE *Daniel E. Reidy* |
| NAME June K. Ghezzi | NAME Daniel E. Reidy |
| FIRM Jones, Day, Reavis & Pogue | FIRM Jones, Day, Reavis & Pogue |
| STREET ADDRESS 77 West Wacker - Suite 3500 | STREET ADDRESS 77 West Wacker - Suite 2500 |
| CITY/STATE/ZIP Chicago, Illinois 60601-1692 | CITY/STATE/ZIP Chicago, Illinois |
| TELEPHONE NUMBER (312) 782-3939 | TELEPHONE NUMBER (312) 782-3939 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6185506 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 02306948 |
| MEMBER OF TRIAL BAR? YES ✔ NO ☐ | MEMBER OF TRIAL BAR? YES ✔ NO ☐ |
| TRIAL ATTORNEY? YES ✔ NO ☐ | TRIAL ATTORNEY? YES ✔ NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ✔ |

**DOCKETED**
**MAR 29 2001**

| (C) | (D) |
|---|---|
| SIGNATURE *John G. Winchester* | SIGNATURE |
| NAME Jason G. Winchester | NAME |
| FIRM Jones, DAy, REavis & Pogue | FIRM |
| STREET ADDRESS 77 West Wacker - Suite 3500 | STREET ADDRESS |
| CITY/STATE/ZIP Chicago, Illinois 60601-1692 | CITY/STATE/ZIP |
| TELEPHONE NUMBER (312) 782-3939 | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6238377 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ✔ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ✔ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ✔ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |